UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DKS VENTURES, LLC, a Washington
Limited Liability, Co.,

                    Plaintiff,

          v.

REBECCA JOYCE KALCH and STEVEN
LOUIS KALCH, individuals,

                    Defendants.

No. CV-11-0254-EFS

**ORDER DENYING DEFENDANT
KALCH'S MOTION TO DISMISS AND
GRANTING PLAINTIFF'S MOTION TO
REMAND**

     A hearing occurred in the above-captioned matter on October 6, 2011. Plaintiff DKS Ventures, LLC (DKS) was represented by Edward Bruya. Les Weatherhead and Geana Van Dessel appeared on Defendant Rebecca Kalch's behalf. Through her Motion to Dismiss, ECF No. 3, Rebecca Kalch seeks dismissal of Plaintiff DKS Ventures, LLC's ("DKS") complaint because 1) there is no personal jurisdiction over her in Washington and 2) DKS's claims must be brought as Federal Rule of Civil Procedure 13(a) compulsory counterclaims in an earlier-filed Missouri lawsuit. Mrs. Kalch also requests an award of attorney's fees and costs under RCW 4.28.185(5) (Washington's long-arm statute). DKS contests Mrs. Kalch's motion, arguing that the parties' Joint Venture Agreement (JVA) contains a reasonable and enforceable forum-selection clause requiring that the parties' disputes be resolved in Spokane County

ORDER * 1

Superior Court.  Consistent with its position, DKS filed a Motion to Remand, ECF No. 9, seeking remand to Spokane County Superior Court and requesting an award of attorneys fees and costs under the JVA and 28 U.S.C. § 1447(c).  Following the filing of these motions, Western District of Missouri U.S. District Judge Dean Whipple dismissed the Kalches' earlier-filed Missouri lawsuit, finding that the JVA selected Spokane County Superior Court as the forum for lawsuits involving the JVA.  ECF No. 29-1. After reviewing the submitted material, relevant authority, and hearing from counsel, the Court is fully informed.  This Order supplements and memorializes the Court's oral rulings denying Mrs. Kalch's dismissal motion, granting DKS's motion to remand the lawsuit to Spokane County Superior Court, and denying attorneys fees and costs to either party.

**A.   Facts**[1]

    In 2009 and 2010, Stuart Roberts, who was a resident of either Tennessee or Montana, approached Mrs. Kalch with the idea that he and

---

    [1]  This factual background section is developed by taking the facts in DKS's favor, unless otherwise noted.  A motion seeking to render a forum-selection clause unenforceable is a motion under Federal Rule of Civil Procedure 12(b)(3) for improper venue. *Argueta v. Banco Mexicano*, 87 F.3d 310, 324 (9th Cir. 1996).  For such a motion, the Court must view the facts in the non-moving party's favor. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004).

ORDER * 2

his family provide and install commercial ovens and other equipment to expand Becca's Barkery's dog-treat making capabilities in exchange for an ownership interest in Becca's Barkery. Becca's Barkery was owned by Mrs. Kalch and her husband, with Mrs. Kalch operating the business. Mrs. Kalch advised Stuart Roberts that she was interested and, in the spring of 2010, negotiations between she, Stuart Roberts, Dave Roberts (Stuart's father who resides in Montana), and Kevin Roberts (Stuart's brother) began in earnest.

Kevin Roberts, who is an attorney in Spokane, Washington, began drafting the JVA to detail the proposed business ("Corporation") agreement. While the details of the JVA were being negotiated, the Roberts began manufacturing the commercial oven in March 2010, which the Roberts anticipated would be ready for delivery to Becca's Barkery in May 2010. Also in March 2010, Stuart Roberts and Mrs. Kalch worked together to get a quote for a new product-bagging machine. In April 2010, Dave and Kevin Roberts traveled to Missouri to visit Becca Barkery's operations. Kevin Roberts contends that during this meeting he discussed with Mrs. Kalch the need for the JVA to contain a clause selecting Spokane County Superior Court as the forum to resolve any disputes that may arise between the parties relating to the Corporation. Mrs. Kalch disputes having any discussion relating to a forum-selection clause.

On May 13, 2010, Kevin Roberts emailed a draft JVA to Stuart Roberts, Dave Roberts, and Mrs. Kalch for comment. This draft contained a forum-selection clause. Mrs. Kalch suggested revisions, however, she

ORDER * 3

did not discuss the forum-selection clause. Changes were made that were largely consistent with Mrs. Kalch's suggestions. Thereafter, Kevin Roberts emailed a revised JVA to everyone.

Mrs. and Mr. Kalch signed a version of the JVA on May 20, 2010. ECF No. 30-1. Dave Roberts signed another version of the JVA, as DKS's "managing member": his signature is undated. ECF No. 23-2.

Unfortunately, delivery of the commercial oven was delayed and it did not perform as Mrs. Kalch expected. According to Mrs. Kalch, Becca's Barkery was unable to fill orders, and its employees suffered burns and other injuries from the new oven. Becca's Barkery has not distributed any income to the Roberts and has not disclosed its financial records to the Roberts.

On May 3, 2011, Mr. and Mrs. Kalch filed a lawsuit in Missouri, alleging breach of the parties' oral contract. On June 13, 2011, the Roberts removed the lawsuit to the U.S. District Court for the Western District of Missouri; the case was assigned to Judge Whipple.

In the meanwhile, on May 24, 2011, the Roberts filed this lawsuit in Spokane County Superior Court. The Kalches removed the lawsuit to this Court on June 29, 2011.

On August 29, 2011, Judge Whipple dismissed and remanded the Kalches' earlier-filed lawsuit to Spokane County Superior Court, enforcing the JVA's forum-selection clause because 1) the parties are bound by the JVA even though DKS was not incorporated when it was signed and 2) Kevin Roberts did not violate the Washington Rules of Professional Conduct (RPC) when drafting the JVA. ECF No. 29-1. The Kalches filed

ORDER * 4

a motion to reconsider; Judge Whipple has not yet ruled on the reconsideration motion.

**B.   Res Judicata**

Mrs. Kalch argues Judge Whipple's ruling should not be given preclusive effect because he did not fully address her argument that the JVA should not be enforced given that it violates Washington's public policy because Kevin Roberts' interaction with her violated the RPCs. An issue is res judicata if:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (citation omitted).  The Court finds that the all of the issues presented before this Court, including the alleged RPC violations by Kevin Roberts, were fully presented to Judge Whipple and that Judge Whipple's findings on these issues were a critical and necessary part of his judgment.  Yet, Judge Whipple has been asked to reconsider his rulings.  Accordingly, if there is presently a question as to the finality of Judge Whipple's judgment, the Court addresses the presented issues on its own.  *See* 9 A.L.R.2d 984 (noting possible question as to preclusive effect of a judgment that is not yet final).  As set forth below, the Court agrees with Judge Whipple's ultimate conclusions.

**C.   Personal Jurisdiction**

Assessing whether the Court has personal jurisdiction over Mrs. Kalch, an out-of-state defendant, would typically start with assessing

ORDER * 5

Mrs. Kalch's contacts with Washington.  However, the JVA contained the following forum-selection clause:

> Governing Law.  This Agreement and any question, dispute or other matter related to or arising from this Agreement shall be governed by the laws of the State of Washington.  Exclusive jurisdiction and venue with regard to this agreement shall be in the Superior Court, Spokane County, Washington.

ECF. No. 31-1 at 21.  Based on this forum-selection clause, DKS argues that Mrs. Kalch consented to jurisdiction in Spokane County Superior Court.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court."). A forum-selection clause in a freely-negotiated contract is presumed valid.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *cf. Rahco v. Int'l, Inc. v. Laird Elec., Ic.*, 502 F. Supp. 2d 1118 (E.D. Wash. 2006) (declining to enforce the forum-selection clause because it was not negotiated).  Mrs. Kalch, therefore, has the burden to establish that 1) the JVA is not an enforceable contract or b) the forum-selection clause itself is unreasonable and unenforceable because:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (internal citations and quotations omitted).

ORDER * 6

1.  <u>DKS's Status</u>

Mrs. Kalch questions the enforceability of the JVA, which was signed by Dave Stuart as DKS's promoter, because DKS was not incorporated until *after* Mrs. Kalch filed the Missouri lawsuit.  DKS argues, and Judge Whipple agrees, that DKS "ratified" the JVA.

Although the Court agrees that DKS may seek to enforce the JVA, the Court concludes that either adoption or assumption, rather than ratification, would apply under the circumstances.  1A Fletcher Cyc. Corp. § 207 (2011) ("Ratification is the acceptance of a previously unauthorized contract, which implies an existing person on whose behalf the contract might have been made . . . ."); 12 Williston on Contracts § 35:71 (4th ed. 2011) ("[S]trictly speaking, the corporation cannot, when formed, ratify the action of the promoter, since it is an essential of ratification that the principal should have been in existence and capable of contracting at the time the agent acted. . . ."); *see also Collins v. Morgan Grain Co.*, 16 F.2d 253, 254 (9th Cir. 1926) ("[U]ntil the corporation is organized, the writing does not take effect as a contract, because the contemplated party to the contract, on the other side, is not yet in existence, and for this reason, there being no contract, the whole undertaking is inchoate and incomplete, and since there is no contract the party may withdraw."); *Van Noy v. Cent. Union Fire Ins. Co.*, 168 Mo. App. 287 (1913) (discussing that a contract entered into on the behalf of a yet-to-be formed corporation may not be ratified because there is truly no contract to ratify).  The use of ratification is understandable, however, given that case law has

ORDER * 7

1   inappropriately used the term.   *See Schmidt v. Morival Farms*, 240 S.W.2d

2   952, 958 (Mo. 1951) (utilizing adoption and ratification

3   interchangeably).

4       Unfortunately, the case law and treatises do not clearly state

5   whether the correct principle to apply in this circumstance is "adoption"

6   or "assumption."   *See* 12 Williston on Contracts § 35.71 (utilizing

7   "adoption" language); 1A Fletcher Cyc. Corp. § 207 ("[A]n affirmative

8   corporate act can result in liability assumed, adopted, or arising out

9   of some contracts.").   Regardless, it is clear that DKS assumed or

10  adopted its promoter's signing of the JVA by filing this lawsuit, after

11  its incorporation, to enforce the JVA.   *See* 12 Williston on Contracts §

12  35.71 ("[O]ne mode of adopting a contract made on its behalf by promoters

13  is the corporation filing a suit on the contract."). And Mrs. Kalch's

14  filing of the Missouri lawsuit in May 2011 does not repudiate the JVA

15  because she had already accepted an oven and therefore received benefits

16  from the JVA.   *See Nat'l Credit Co. v. Casco Co.*, 173 Wash. 275 (1933)

17  ("Having accepted the benefits of the contract, appellant can not

18  repudiate its obligations."); 12 Williston on Contracts § 35.71 ("[U]ntil

19  acceptance, the [entity contracting with the promoter] may withdraw.").

20      In sum, the Court finds that DKS may sue to enforce the JVA and its

21  forum-selection clause.

22      2.   <u>Meeting of the Minds</u>

23      In her filings, Mrs. Kalch appears to argue that there was no

24  meeting of the minds because no single version of the JVA was signed by

25  all parties.   It does appear that the Kalches signed one version of the

26

    ORDER * 8

JVA and Dave Kalches signed another version of the JVA.  Therefore, there could be a reasonable dispute as to whether there was a meeting of the minds as to the essential terms of the JVA.  However, because at this time the facts must be viewed in DKS's favor, and Kevin Roberts declared that Mrs. Kalch agreed that all disputes would be heard in Spokane County Superior Court, the Court must accept that the parties agreed (either orally or in writing) to Spokane County Superior Court as the forum.

### 3.   Kevin Roberts and RPCs

Mrs. Kalch finally argues that inclusion of the forum-selection clause in the JVA was itself the product of a violation of the RPCs and therefore enforcement of the JVA is against the public policy of Washington.  *See McGill v. Hill*, 31 Wn. App. 542 (1982) (recognizing that if the application of a forum-selection clause violates a "fundamental public policy" of Washington, it will not be enforced).  She argues that Kevin Roberts violated 1) RPC 1.8 by entering into a contract with his own client (Mrs. Kalch) that was against her best interest and 2) RPC 4.3 by continuing to speak with her when he knew that she had other counsel.

RPC 1.8 prohibits a lawyer from entering into a business transaction with a client without that client consenting in writing to proceed.  *See* RPC 1.8(a) (listing the three steps that must occur if the lawyer is to enter a business transaction with a client).  Under the circumstances, the Court finds that an attorney-client relationship was not created between Kevin Roberts and Mrs. Kalch and therefore RPC 1.8 does not apply.  An attorney-client relationship is formed when the client reasonably believes that an attorney-client relationship exists based on

ORDER * 9

the totality of the circumstances, including the attorney's words and conduct. *Bohn v. Cody*, 119 Wn.2d 357, 363 (1992).  It was not reasonable for Mrs. Kalch, a college-educated businesswoman, to believe that Kevin Roberts, a proposed co-owner in the Corporation, was representing her best interests when negotiating the JVA.  She submits that Stuart Roberts advised her that Kevin Roberts would provide his legal services to the Corporation.  Yet, providing legal services to the Corporation after it is formed is different than providing legal services to Mrs. Kalch during the negotiation of the JVA.  Further, the facts must be taken in DKS's favor at this time, and Stuart Roberts submitted a declaration stating, "I did not tell Rebecca Kalch that my brother Kevin Roberts would be acting as her lawyer or contributing legal services for the [Corporation] that was being discussed.  The discussions concerning a potential Joint Venture revolved around my brother Kevin participating by providing equipment along with my father."  ECF No. 24 ¶ 2.  Kevin Roberts also filed a declaration contradicting Mrs. Kalch's assertions, stating that he did not advise her that he was representing her or the Corporation but rather that his interest in DKS was to help provide the equipment.  ECF No. 23 ¶¶ 19 & 20.

In addition, the questions that Mrs. Kalch asked Kevin Roberts during the drafting of the JVA pertained to negotiations and did not include legal advice.  In relation to the forum-selection clause discussions, Kevin Roberts states that he discussed having Spokane County Superior Court be the forum where disputes would be resolved in exchange for Mrs. Kalch's stated desire to retain a majority ownership:  51%

ORDER * 10

ownership rather than 50% ownership in the Corporation.  ECF No. 23 ¶ 40. Under the circumstances, although it may have been reasonable for Mrs. Kalch to believe that once the Corporation was formed Kevin Roberts would serve as the Corporation's attorney, it was not reasonable for Mrs. Kalch to believe that during the negotiation process Kevin Roberts was providing her with legal advice.   Therefore, Kevin Roberts did not violate RPC 1.8.

Mrs. Kalch's next argument is that Kevin Roberts violated RPC 4.3, which states:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

There is no question that Kevin Roberts' and Mrs. Kalch's interests were in conflict: Kevin Roberts was negotiating for himself and his family, not Mrs. Kalch.   The Court finds that a reasonable person would understand that Kevin Roberts was not disinterested and therefore Kevin Roberts need not have advised Mrs. Kalch to secure the advice of other counsel.   Regardless, Kevin Robert states that he asked Mrs. Kalch whether she was represented by an attorney; she responded yes, and when he inquired as to her attorney's name, she advised that she wanted to proceed without involving her attorney.   ECF No. 23 ¶¶ 15 & 37.

For these reasons, the Court finds, consistent with Judge Whipple,

that the JVA and its forum-selection clause did not violate Washington's public policy as recognized by the RPCs.

D.   Summary

Because, according to DKS, Mrs. Kalch consented to have all disputes between the parties relating to the Corporation resolved in Spokane County Superior Court, the Court finds Mrs. Kalch agreed to personal jurisdiction in Washington. *See* Fed. R. Civ. P. 4(k) ("Serving a Summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). Mrs. Kalch's motion to dismiss is denied in part.

**C.   Rule 13(a) (and Remand)**

Mrs. Kalch initially asked this Court to find that DKS's claims were required to be brought in the Missouri lawsuit as compulsory counterclaims under Federal Rule of Civil Procedure 13(a), which states, "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the same transaction or occurrence." Fed. R. Civ. P. 13(a). Clearly, DKS's claims in its May 24, 2011 Spokane County-filed lawsuit are compulsory to those claims filed by the Kalches in Missouri on May 3, 2011. Typically, the "first-to-file" rule would allow this Court to transfer this second lawsuit to Missouri. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

However, the Missouri court has since dismissed that lawsuit because, according to DKS, Mrs. Kalch agreed to have the parties'

ORDER * 12

disputes resolved in Spokane County Superior Court.  Accordingly, The Court grants DKS's motion to remand this lawsuit to Spokane County Superior Court, where Mrs. Kalch may assert her Missouri claims as compulsory counterclaims.  *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (recognizing that the first-to-file rule "is to be applied with a view to the dictates of sound judicial administration.").

**D.   Attorneys Fees**

Both parties ask the Court to award attorneys fees: 1) Mrs. Kalch under RCW 4.28.185(5), and 2) DKS under the JVA's attorney-fees provision and 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal.").  Given the Court's above rulings, Mrs. Kalch is not entitled to attorneys fees under RCW 4.28.185.  And the Court declines to award attorneys fees under either § 1447(c) or the JVA.  Both parties are to bear their own fees and costs associated with this lawsuit.

**E.   Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.   Mrs. Kalch's Motion to Dismiss, **ECF No. 3**, is **DENIED**.

2.   DKS's Motion to Remand, **ECF No. 9,** is **GRANTED** (remand) **and DENIED** (attorney's fees) **IN PART**.

3.   **Judgment** is to be entered in DKS's favor without prejudice.

4.   All pending hearings and deadlines are **STRICKEN**.

5.   This lawsuit is to be **REMANDED** to Spokane County Superior

ORDER * 13

1  Court, Case No. 11202145-3.

2      5.   This file shall be **CLOSED.**

3      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

4  this Order and provide copies to counsel and Spokane County Superior

5  Court.

6      **DATED** this   12th   day of October 2011.

7

8                   s/ Edward F. Shea
                    EDWARD F. SHEA
9          UNITED STATES DISTRICT JUDGE

10

Q:\Civil\2011\0254.dismiss.remand.lc1.frm
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER CLOSING FILE - 14